

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LEONARDO GREGORIO, <br> Plaintiff/Counter-Defendant <br><br> v. <br><br> YELLOW TRANSPORTATION, INC., <br> Defendant/Counter-Plaintiff <br><br><br> YRC f/k/a YELLOW TRANSPORTATION INC., <br> Third-Party Plaintiff <br> v. <br><br> HVM, LLC, EXTENDED STAY HOTELS, <br> LLC, AND EXTENDED STAY AMERICA, INC., <br> Third-Party Defendants. | No. 08 C 6257 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Leonardo Gregorio sued Yellow Transportation, Inc. ("YRC") after suffering an injury during a delivery made by YRC. Gregorio alleges that a YRC driver coerced him into helping unload a flat-screen television from the YRC truck and that the driver's negligence caused his injury.

On June 10, 2008, Gregorio worked as the district manager at an Extended Stay Hotel in Romeoville, Illinois. On that day, a YRC employee, Jeffrey Cramer, arrived at the Hotel to deliver a television set. Cramer could not, however, unload the television by himself and requested that Gregorio provide an employee to assist him. When Gregorio informed Cramer that he did not have any maintenance workers to help remove the television from the truck, Cramer allegedly became disruptive and threatened to abandon the television in the Hotel's parking lot.

1

Gregorio then agreed to assist Cramer in unloading the television. According to Gregorio, Cramer pushed the television from the truck onto his right arm and body, causing a rupture of his right biceps tendon and an injury to his lumbar disk.

Shortly after the accident, Cramer called YRC's Operations Manager, Sabino Losordo, and told him that there was a "situation." (Cramer Dep. at 162). Cramer gave Losordo a brief account of what transpired at the hotel and Losordo instructed him to "put it in writing." (Cramer Dep. at 163). Cramer then wrote an e-mail to Mike Jeske, YRC's terminal manager. (Cramer Dep. at 163-65). Jeske forwarded the e-mail to Losordo, who reviewed it and submitted it to YRC's risk and liability department. (Losordo Dep. at 44-45).

Gregorio now seeks to compel YRC to produce the e-mail written by Cramer. YRC argues that it is protected by the attorney-client privilege and by the work-product doctrine.

Because Illinois law governs the claims and defenses involved in this diversity suit, Illinois law also governs the scope and application of the attorney-client privilege. Fed. R. Evid. 501; *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 989 (7th Cir. 1994); *Cars R Us Sales and Rentals, Inc. v. Ford Motor Co.*, No. 08 C 50270, 2009 WL 1703123, at * 2 (N.D. Ill. Jun. 18, 2009). The Illinois Supreme Court has adopted the "control-group" test to determine when the attorney-client privilege applies in a corporate setting. *Consolidated Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 432 N.E.2d 250 (1982). Under that test, the privilege protects only the communications of the corporation's decisionmakers or those who substantially influence corporate decisions. *Id.* at 119. The Illinois Supreme Court makes clear that employees who supply only the factual bases upon which the decisionmakers predicate their opinions do not fall within the control-group and therefore the privilege does not apply to such

employees. *Id.* at 121. In this case, Cramer merely supplied a factual statement to a potential decision maker. His communication therefore is not protected by the attorney-client privilege.

On the other hand, federal law, not Illinois law, governs the work-product doctrine. *See Resurrection Healthcare and Factory Mut. Ins. Co. v. GE Health Care*, 07 C 5980, 2009 WL 691286, at *1 (N.D. Ill. Mar. 16, 2009); *A.O. Smith Corp. v. Lewis, Overbeck, & Furman*, 90 C 5160, 1991 WL 192200, at *1 (N.D. Ill. Sep. 23, 1991); Fed. R. Civ. P. 26(b)(3). The Federal Rules protect documents "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The threshold question in determining whether the doctrine applies is whether, in light of the document itself and the facts surrounding its creation it can be fairly said that the document was prepared because of litigation. *Resurrection Healthcare*, 2009 WL 691286 at *1. In other words, the party must seeking to invoke the doctrine must point to facts that demonstrate that it prepared the document in response to a substantial and significant threat of litigation and not simply because "litigation was in the air." *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *5 (N.D.Ill. Aug.12, 1999). Moreover, documents prepared in the ordinary course of business cannot be withheld as work product. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996).

YRC points to Losordo's deposition in which he instructed Cramer to "put something down in writing" that he could forward to the risk and liability department to argue that Cramer created the e-mail because of a substantial threat of litigation. *See* Losordo Dep. at 42. But the mere contingency that litigation may result from an accident or other event does not automatically insulate a document as work product. *Binks Mfg Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983). Investigative reports developed in the ordinary course of business are not work product. *Id.* Instead,

3

the motivating force behind the creation of the document must be to *aid* in litigation. *Id.* (emphasis added). Further, the work product does not protect documents simply because a company's internal investigation is co-existent with a present or anticipated lawsuit that is the same subject matter of the litigation. *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 196 F.R.D. 610, 614 (N.D. Ill. 2000). Instead, the document must also be of a legal nature and "primarily concerned with legal assistance; technical information is otherwise discoverable." *Id.*

The e-mail sent by Cramer contains no legal advice and is not of a legal nature. Rather, it contains purely factual information, summarizing Cramer's recollection of the accident. Moreover, it appears that, based upon Losordo's deposition testimony, YRC routinely collected information as a matter of course after any accident. *See Binks*, 708 F.2d at 1119-20; *Caremark*, 196 F.R.D. at 614.. The mere fact that Gregorio may have had a claim against it does not mean that Cramer's matter-of-course e-mail becomes part of YRC's work product. YRC has not pointed to sufficient facts to convince the court that when Losordo insturcted Cramer to put his account of the events in writing that he did so to aid YRC's efforts to litigate a claim that Gregorio might bring.

The Court finds that neither the attorney-client privilege, nor the work-product doctrine protect Cramer's email and therefore GRANTS Gregorio's Motion to Compel.

IT IS SO ORDERED.

11/5/09
Dated

Hon. William J. Hibbler
United States District Court